* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Deluca with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement as:
 STIPULATIONS *Page 2 
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between Plaintiff and Employer-Defendant.
3. At all relevant times, Employer-Defendant was a duly-qualified Self-Insured.
4. The parties stipulated into evidence a Pretrial Agreement, North Carolina Industrial Commission Forms, medical records of Plaintiff, Plaintiff's Responses to Defendants' Interrogatories and Request for Production of Documents, a paycheck summary, and Defendants' Exhibit 1.
 * * * * * * * * * * * ISSUES
The following issues were presented for hearing before the Deputy Commissioner:
1. Whether plaintiff was injured by accident or specific traumatic incident on or about July 30, 2004;
2. Whether plaintiff suffered an occupational disease, to wit: spine injury caused by repetitive bending, lifting and/or use of tools;
3. What is plaintiff's average weekly wage;
4. To what benefits is plaintiff entitled; and
5. If the claim is found compensable, whether defendants are entitled to a credit for payments made on short-and long-term disability since the date of incident.
 * * * * * * * * * * *
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. Plaintiff was born on July 10, 1954. She had a GED and a two-year degree in manufacturing engineering technology. Plaintiff had worked as a sewer in knitting plants for more than 16 years and had worked for defendant-employer for approximately seven years prior to July 30, 2004.
2. In her employment with defendant-employer, plaintiff had worked various jobs, but primarily assembled heavy equipment components for off-road vehicles. Her normal job duties required her to assemble large mechanical parts such as transmissions, clutches, and differentials.
3. Plaintiff complained of neck and back pain to her primary care physician, E. H. (Sam) Stout, M.D., in October 1996, July 2003, and October 2003.
4. Plaintiff treated with Ronald E. Adams for neck and back pain on an irregular basis since February 2003.
5. On July 30, 2004, plaintiff was asked to assist a co-worker, Frank Metz, in the painting department with the painting of axles. Ordinarily, the axles were painted by lifting them up on a hoist, at which time the painter, Mr. Metz, would apply masking tape and light-weight bearing caps onto the axles and then spray paint them in the paint booth. On this particular occasion, more axles had come through the painting department than Mr. Metz had been able to paint, and the axles were lying on the floor. The workspace was cluttered with these large and heavy axles and Mr. Metz was using the only available hoist to paint axles.
6. Plaintiff was asked to tape the axles so that Mr. Metz could paint them. In order to do this, she had to get a small bucket of lightweight bearing caps and place those caps over the bearings on the axles and proceed to apply masking tape to the parts of the axles that were not to *Page 4 
be painted. She had to reach down while bending, twisting and stretching, to reach the axles on the floor. Because of the cluttered workspace, it was difficult for her to find an appropriate position for her feet.
7. As plaintiff bent down, twisted, and reached to place a bearing cap on the first axle, she felt a pain from her neck down into the middle of her back and felt her entire left side go numb. She fell against a piece of equipment and Frank Metz came out to ask her what was wrong. They had a conversation and he advised her to go to the Emergency Room ("ER") but as she stood up her feeling began to return so she declined to leave at that time. After resting a few minutes, she attempted to do the job again but when she stretched and reached, her left side again became temporarily numb or paralyzed. After resting for a minute, she reported the incident to her supervisor and obtained his permission to go to the ER.
8. At the ER she reported that she had felt an onset of pain and numbness on her left side while attempting to tape axles at work.
9. Plaintiff had not been required to tape axles that were lying on the floor during her previous seven years of employment with defendant-employer.
10. The Full Commission finds that the requirement that plaintiff tape the axles on the floor introduced an unusual condition to her employment as it was not part of her normal job, and did not constitute the normal manner of performing the job of painting axles.
11. On August 2, 2004, plaintiff visited Dr. Ronald Adams, her chiropractor, and reported an incident at work. Dr. Adams testified that the numbness she experienced was a new symptom and that she probably had a new injury relative to the complaints he had treated previously; however, the Full Commission gives greater weight to the opinions of plaintiff's treating physicians who ultimately diagnosed plaintiff with pre-existing spondylosis. *Page 5 
12. Plaintiff then sought treatment with her family doctor, Sam Stout, M.D., beginning on August 2, 2004. An MRI performed on August 6, 2004, revealed a broad-based herniated disc in her neck at the C5-6 level and a spur or osteophyte at the C6-7 level. Dr. Stout diagnosed spondylosis at C5-7, but was of the opinion that test results did not explain plaintiff's left upper and lower extremities symptoms.
13. Dr. Stout referred plaintiff to Dr. Ken Wood, a spine surgeon in Statesville. Dr. Wood saw plaintiff once on August 23, 2004, and was unable to determine the etiology of her left upper and lower extremity problems at that time due to a somewhat confusing clinical presentation.
14. Plaintiff saw neurologist Dr. Edward Hill of Statesville who ruled out multiple sclerosis and other potential problems with the brain.
15. Plaintiff worked August 4, 2004, and attempted to return to work for defendant-employer in a light-duty capacity from October 11, 2004, through October 29, 2004. Defendant-employer provided her with work as a trainee or student in the tool-making department; however, climbing the stairs to the work area was extremely difficult for plaintiff in light of her symptoms. On October 29, 2004, defendant-employer notified plaintiff that they no longer had light-duty work for her. Plaintiff has not earned wages at defendant-employer or for any other employer since that time. Although plaintiff was still employed by defendant-employer at the time of hearing before the Deputy Commissioner, she has been out of work from July 31, 2004 through August 3, 2004; from August 5, 2004 through October 10, 2004; and from October 30, 2004 through the date of hearing before the Deputy Commissioner. *Page 6 
16. Beginning on January 19, 2005, plaintiff saw Dr. Domagoj Coric, a neurosurgeon in Charlotte. Dr. Coric performed a two-level fusion with corpectomy in her neck on March 31, 2005.
17. Dr. Coric has continuously held plaintiff out-of-work from January 19, 2005, through the date of his deposition on February 22, 2006, and continuing; however, Dr. Coric testified that he expected plaintiff to reach maximum medical improvement approximately three months after the deposition. Between July 30, 2004, and January 19, 2005, plaintiff was continuously either on light-duty restrictions or written out of work by a treating physician due to her neck symptoms.
18. Based upon the competent evidence of record, the Full Commission finds that the July 30, 2004 work-related incident caused a temporary exacerbation of plaintiff's pre-existing spondylosis. Dr. Stout, plaintiff's primary care physician, testified that the incident could have caused an impingement due to the spondylosis. However, Dr. Stout was of the opinion that the impingement was temporary because it did not show up on MRI's following the incident. Dr. Stout also testified that the difference between the MRI's of plaintiff's cervical spine on August 6 and October 27, 2004, were due to the gradual worsening of plaintiff's spondylosis. The Full Commission finds there to be insufficient evidence to show that the degeneration of plaintiff's spine was caused or exacerbated by the alleged incident; rather, the evidence shows that plaintiff experienced merely a temporary exacerbation of her spondylosis as a consequence of the July 30, 2004 work-related incident.
19. Dr. Wood testified that when he examined plaintiff on August 23, 2004, there was no impingement of plaintiff's cervical spine due to the spondylosis or the July 30, 2004 incident at work. Dr. Wood concurred with Dr. Stout in that if plaintiff experienced an impingement due *Page 7 
to her spondylosis and the July 30, 2004 incident, then it was a temporary impingement because it did not show up on MRI's or in examinations. Plaintiff reported to Dr. Wood that her pain and numbness were intermittent, and Dr. Wood testified that plaintiff's pain episodes could be sparked by as little as "picking up a book." Based upon the opinions of Dr. Wood and Dr. Stout regarding the intermittent nature of plaintiff's spondylosis, and given the fact that plaintiff's pain and numbness resolved within several weeks of the July 30, 2004 incident, the Full Commission finds that the July 30, 2004 work-related incident caused a temporary exacerbation of plaintiff's pre-existing spondylosis.
20. Plaintiff has relied on the testimony of Dr. Coric in asserting that the July 30, 2004 work-related caused or contributed to plaintiff's spondylosis. However, Dr. Coric contradicts his own assertion that the incident could have caused plaintiff's spondylosis by testifying that plaintiff's spondylosis was present well before the July 30, 2004 incident. And although the record does support a finding that the July 30, 2004 incident caused a temporary exacerbation of plaintiff's pre-existing spondylosis, there is insufficient evidence upon which to support Dr. Coric's opinion that plaintiff's cervical spine has continued to degenerate due to the incident. Given that Dr. Coric did not treat plaintiff until five months after the July 30, 2004 incident, the Full Commission gives greater weight to the testimony of Dr. Wood and Dr. Stout, who treated plaintiff contemporaneously with the injury and were of the opinion that plaintiff's cervical spine did not degenerate as a cause of the incident, but in fact, testified that plaintiff's pain and numbness improved within weeks of the alleged incident. Though plaintiff's cervical condition may have deteriorated since the time of the July 30, 2004, incident, there is insufficient evidence to show that such deterioration is causally related to the incident, when the greater *Page 8 
weight of the evidence shows that the gradual deterioration of the cervical spine is in fact characteristic of spondylosis.
21. Plaintiff has provided insufficient evidence to establish that her employment with defendant-employer placed her at an increased risk of developing spondylosis or that it was a significant causal factor in her development of spondylosis.
22. As to the plaintiff's complaints of ongoing left-sided numbness, the Full Commission finds that the evidence of record is insufficient to prove that the numbness is causally related to the July 30, 2004 incident. Although Dr. Coric was of the opinion that the numbness was caused by a nerve impingement that occurred as a result of the July 30, 2004 incident, the Full Commission gives greater weight to Dr. Wood and Dr. Stout, who treated plaintiff contemporaneously with the injury and were of the opinion that any impingement of plaintiff's nerves would have, in fact, been temporary considering that plaintiff's pain and numbness improved within weeks of the alleged incident.
23. Plaintiff's average weekly wage as of July 30, 2004, was $1,244.78 and her compensation rate was the 2004 maximum of $688.00 per week.
24. Plaintiff was paid a combination of weekly sick pay and short-term disability in 2004. Plaintiff did not pay any portion of the premium for the short-term disability.
25. Plaintiff was paid long-term disability beginning on March 31, 2005, and continuing through the date of the hearing before the Deputy Commissioner. Payments for the long-term disability were made once a month. Plaintiff had elected an option by which she paid a premium that would increase long-term disability benefits from 50% to 60% of her salary. This premium represented the only money that plaintiff has paid for long-term disability benefits coverage. *Page 9 
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident and an injury by specific traumatic incident on July 30, 2004, when she felt an onset of pain and numbness when she bent, twisted, and stretched to begin the unusual task of taping the axles that were on the floor. N.C. Gen. Stat. § 97-2(6), Richards v. Town of Valdese, 92 N.C. App. 222, 374 S.E.2d 116
(1988), Fish v. Steelcase, 116 N.C. App. 703, 449 S.E.2d 233 (1994).
2. When an employee afflicted with a pre-existing disease suffers an injury by accident, and such injury materially accelerates or aggravates the pre-existing disease and, thus, contributes to the disability of the employee, then the injury is compensable. Anderson v. Northwestern MotorCo., 233 N.C. 372, 64 S.E.2d 265 (1951). In the present case, the greater weight of the evidence shows that the July 30, 2004 work-related incident caused a temporary exacerbation or aggravation of plaintiff's pre-existing spondylosis. Id.
3. Plaintiff is entitled to temporary total disability compensation at the weekly rate of $688.00 per week from July 31, 2004 through August 5, 2004. N.C. Gen. Stat. § 97-29. Plaintiff has failed to show that her disability beyond that date is causally related to the temporary exacerbation or aggravation of plaintiff's pre-existing spondylosis that resulted from the July 30, 2004 incident. Id.
4. Defendants are responsible for medical treatment incurred by plaintiff that is reasonably related to the temporary exacerbation or aggravation of plaintiff's pre-existing *Page 10 
spondylosis that resulted from the July 30, 2004 incident. N.C. Gen. Stat. §§ 97-2(19) and 97-25. Plaintiff is not entitled to ongoing treatment for her pre-existing spondylosis. Id.
5. Defendants are entitled to a credit for any compensation paid to plaintiff during the period of disability provided herein, and for any short-term disability compensation paid from the employer-funded plan. N.C. Gen. Stat. § 97-42. Defendants are not entitled to a credit for the sick days paid subsequent to July 30, 2004, because those sick days were due and payable to plaintiff as being previously earned. N.C. Gen. Stat. § 97-42, Christopher v. Cherry Hospital, 145 N.C. App. 427, 430,550 S.E.2d 256, 258 (2001).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall provide to plaintiff temporary total disability compensation at the weekly rate of $688.00 per week from July 31, 2004 through August 5, 2004, subject to the attorney's fee and credit provided herein. Compensation that has accrued shall be paid to plaintiff in a lump sum.
2. Defendants shall provide for medical treatment incurred by plaintiff that is reasonably related to the temporary exacerbation or aggravation of plaintiff's pre-existing spondylosis that resulted from the July 30, 2004 incident. Defendants are not responsible for ongoing treatment of plaintiff's pre-existing spondylosis.
3. Defendants shall pay directly to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded herein. Fees that are *Page 11 
based upon compensation that has accrued shall be paid to plaintiff's counsel in a lump sum; thereafter, defendants shall pay every fourth check of compensation to plaintiff's counsel.
4. Defendants shall receive a credit for any compensation paid to plaintiff during the period of disability provided herein, and for any short-term disability compensation paid from Employer-Defendants' funded plan.
5. Defendants shall pay the costs, including an expert witness fee of $500.00 to Dr. Wood, and $625.00 to Dr. Coric, if not previously paid.
This 22nd day of March 2007.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/___________________ DIANNE C. SELLERS COMMISSIONER